[Crim. No. 6722.   Second Dist., Div. Two.   Dec. 14, 1959.]

THE PEOPLE, Respondent, v. HAROLD PIERRE, Appellant.

Harold Pierre, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

ASHBURN, J.—Indicted for violation of section 11500, Health and Safety Code, in that he did "sell, furnish and give away a narcotic, to wit, heroin," defendant Pierre, who is also known as "Grey Eyes", was convicted by a jury "as

charged in the, indictment." Represented by the public defender at the trial, he now appears in propria persona upon an appeal "from the Judgement and sentence." His arguments prove to be without merit.

The claim that the evidence is insufficient to support the verdict is patently not sustainable. Viewing the evidence most favorably to the respondent and assuming in favor of the verdict the existence of every fact which the jury reasonably could have deduced from the evidence, as we must do (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911]), it appears that the verdict is amply sustained.

In the afternoon of May 23, 1958, Police Officer John R. Walton, who was working as an undercover officer and dressed in plain clothes, saw defendant crossing the street near Mickey's Liquor Store which is located on the southwest corner of Fifth Street and Central Avenue in Los Angeles. Walton entered the store and was standing in front of the clerk when defendant entered and walked over to Walton who asked him "if I could get some smacks" (meaning heroin). Defendant said "Yes, I could fix you up." They walked outside and defendant asked if Walton wanted a large or small paper (bindle of powder). Walton said "large" and gave defendant $9.00; defendant said it would be $9.50 for "[t]his is some good stuff you're getting." Walton said: "It had better be good" and handed defendant an additional 50 cents. Pierre walked over to another man (who was unknown to Walton), talked with him, the man reached into his pocket, pulled out a clenched fist, their hands met, defendant had a large paper bag in his hand, the other man handed him something but the officer could not see what it was, though they were only 6 to 7 feet away from him. Defendant motioned to Walton and the two of them went into a doorway on East Fifth Street, defendant said "Here" and the officer was handed a blue balloon containing powder which later was identified as one to two grains of narcotic.

On the 1st of the following December defendant was interrogated at the police station and the interview was recorded, the tape being received in evidence at the trial. Defendant initially said he did not know why he was there; when Walton came in he denied that he knew or ever had seen the officer. Walton thereupon recited the facts to him and defendant said he used narcotics but never sold; that if it happened as claimed he got the narcotic for the officer through mistake;

that he did not know who he got it from. Asked if it was "Darby," he said "Man, you know who I got that stuff from. Why are you trying to frame me?" When the inquiry was repeated defendant said, "Well, the man's name is 'Darby.' He's dealing for a man called, 'Fats.'" Asked if he remembered the transaction defendant said: "Yes, I do remember it. I don't know why such a thing—I don't know why I did it. It was just one of those things." "I was only trying to get myself a fix." Also, that Darby was going to give him a half a balloon of the stuff and "[t]hat I don't have anything of my own to sell. I don't have any narcotics. Why are you trying to frame me?"

As a witness in his own behalf defendant denied the sale to Walton but said that the officer gave him the money, he got the narcotic, gave it to the officer who then left, that he did this because the officer said his wife was sick and he got it for her. He further testified: "Well, to be frank, I did get the money from the man, but just like I say, I didn't have any heroin. The man come up to me, asked me could I get him some heroin, and he said his wife was a prostitute. I'm trying to get you to understand. He say that his wife was a prostitute, and she was sick up in a hotel on the west side. I takes—explain to him, 'I don't sell no narcotic. I know a lot of people that handle it. I might be able to get it for you.' Q. I see. And that is the reason you went and did what he asked you to do; is that right? A. That is the reason. But, not having the knowledge the man was a policeman, I did it on account of his sick wife, or something like that." Essentially this is a confession from the witness stand that he was guilty so far as concerned the charge that he did ". . . give away a narcotic." Appellant argues that his own testimony "should be taken as a *true statement of the case.*" This is manifestly erroneous. Not only does an appellate court not weigh the evidence but the cold record at bar shows that the manner and content of defendant's testimony was such as to warrant the court in discrediting it except so far as it agreed with that of the prosecution witnesses, Officers Walton and Garrahan.

Appellant's principal claim is entrapment through the officer's pretending that his wife was sick and thereby inducing defendant to get the narcotic for her, which he would not have done except through the excitation of his sympathy. This is contrary to the officer's testimony and was properly rejected by the jury. The implied finding that the unlawful

intent originated in the mind of defendant and that Officer Walton merely afforded him an opportunity to ply his nefarious trade is well supported by the evidence. ▮ "The many decisions in this state which define the defense of entrapment were reviewed in *People* v. *Lindsey*, 91 Cal.App.2d 914 [205 P.2d 1114], and the law stated as follows: 'Where the doing of an act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. (Citations.) If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment.' (P. 917.) ▮ More recently it was held: 'It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. ▮ Where an accused has a pre-existing criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment.' " (*People* v. *Braddock*, 41 Cal.2d 794, 802 [264 P.2d 521].) See also *People* v. *Benford*, 53 Cal.2d 1, 8-13 [345 P.2d 928].

It is also claimed that the court erred prejudicially in refusing and failing to instruct upon entrapment. The instructions given and refused are not in the record before us, but their inclusion was requested by defendant in his notice of appeal. ▮ We have examined the original file, which discloses that Caljic instruction Number 851[1] was given, but it does not show who requested it, hence it is to be presumed that defendant did so (see 3 Cal.Jur.2d § 276, p. 821). ▮ Another instruction requested by the People was given, designated as Caljic Number 854, but departing from

[1]CALJIC No. 851: "WHEN ENTRAPMENT A VALID DEFENSE. The law does not tolerate a person, particularly a law enforcement officer, generating in the mind of a person who is innocent of any criminal purpose, the original intent to commit a crime thus entrapping such person into the commission of a crime which he would not have committed or even contemplated but for such inducement; and where a crime is committed as a consequence of such entrapment, no conviction may be had of the person so entrapped as his acts do not constitute a crime.

"If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested by another person acting with the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts so committed."

that form[2] through omitting the phrase "and the defendant had no previous intention of committing such offense"; when read in connection with 851 as given, this omission proves to be neither misleading nor prejudicial. No other instructions were given or requested upon the subject of entrapment.

Appellant argues that Penal Code, section 1093 (apparently meaning § 1093.5), requires the court in criminal cases, upon request made, to advise counsel of all instructions which will be given and to do so before the argument begins. The record does not show any failure or refusal to advise counsel on that subject.

It is asserted that the court should have instructed the jury "on which of the three premises: *Sell, Furnish,* or *Give away,* the prosecution relied upon." The judge was not required so to do. He did, however, instruct at the request of the People: "It is unlawful for any person to sell, furnish, administer or give away a narcotic." (See Caljic 701.) The indictment is couched in the language of the statute, is in the conjunctive, and the verdict is that defendant is guilty of violation of section 11500 Health & Safety Code "as charged in the indictment." In no respect is this improper procedure (Fricke on California Criminal Procedure (4th ed.), pp. 99, 101, 329; 26 Cal.Jur.2d § 38, pp. 494-496; § 68, p. 540; 48 Cal.Jur.2d § 524, p. 528). The foregoing authorities also dispose of the contention that the verdict is incomplete because it does not "specifically find upon which of the three premises, (*Sell, Furnish,* or *Give away*), that the Statute was violated."

There has been no miscarriage of justice here.

Defendant has appealed from the "judgment and sentence," a bit of tautology, for the judgment and sentence are one and the same. (*People* v. *Tokich,* 128 Cal.App.2d 515, 519 [275 P.2d 816]; *People* v. *Ramirez,* 143 Cal.App.2d 554, 558 [300 P.2d 106]; *People* v. *Perkins,* 147 Cal.App.2d 793, 797 [305 P.2d 932]; *People* v. *Smith,* 164 Cal.App.2d 510, 514 [330 P.2d 678].)

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

[2]CALJIC No. 854: "It is important in considering the defense of entrapment to ascertain whether the acts charged as constituting the offense were the result of the intent of some other person to place the accused in a position where he might be charged with the offense, in which event the defendant may not be convicted or whether the defendant, acting in pursuance of his own intent, committed the acts, such other person merely affording him the opportunity of doing so, in which latter event the defense of entrapment would not relieve the defendant from responsibility."