[No. B136458. Second Dist., Div. Five. Feb. 26, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
HECTOR MUNOZ et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I. of the Discussion.

240

**COUNSEL**

Philip K. Cohen and Joseph B. de Illy, under appointments by the Court of Appeal, for Defendant and Appellant Hector Munoz.

David M. Dudley for Defendant and Appellant Johnny Derek Krauss.

Joseph P. Farnan, under appointment by the Court of Appeal, for Defendant and Appellant Claudia Patricia Ramos.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant Mario David Chanes.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster and Alan D. Tate, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GRIGNON, J.**—Penal Code section 629.50 permits a law enforcement agency to obtain an order authorizing the interception of wire, electronic digital pager, or electronic cellular telephone communications (wiretap)[1] under certain limited circumstances. The application for a wiretap order must be made in writing "to the presiding judge of the superior court or one other judge designated by the presiding judge." The presiding judge of the Los Angeles Superior Court designated a judge to review wiretap applications. In addition, the presiding judge of the Los Angeles Superior Court designated a second judge to review the applications if the first designated judge was unavailable. In the published portion of this opinion, we conclude this sequential designation was permitted under the statute and uphold a wiretap authorized by the second designated judge when the first designated judge was unavailable. In the unpublished portion of the opinion, we also conclude that the wiretap application established probable cause and necessity. We affirm.

### PROCEDURAL BACKGROUND

On July 25 1997, police obtained a wiretap for a pager believed to belong to a major supplier of cocaine. This wiretap led to surveillance and other wiretaps. The investigation culminated in the arrest of defendants and the seizure of 67 kilograms of cocaine and more than $997,000 in cash.

Defendants were charged with various drug offenses. They filed motions to suppress, challenging only the initial pager wiretap. The motions were denied. Defendant and appellant Mario David Chanes pleaded no contest to possession for sale of cocaine (Health & Saf. Code, § 11351), admitted the quantity exceeded 10 kilograms (Health & Saf. Code, § 11370.4, subd. (a)(3)), and admitted a prior felony conviction within the meaning of Penal Code section 1170.12. He was sentenced to 18 years in prison. Defendant and appellant Hector Munoz pleaded guilty to transportation or sale of

---

[1] We use the word "wiretap" to refer to all forms of electronic surveillance.

cocaine (Health & Saf. Code, § 11352) and admitted the quantity exceeded 20 kilograms (Health & Saf. Code, § 11370.4, subd. (a)(4)). He was sentenced to 18 years in prison. Defendant and appellant Johnny Derek Krauss pleaded guilty to transportation or sale of cocaine and admitted the quantity exceeded 10 kilograms. He was sentenced to 13 years in prison. Defendant and appellant Claudia Patricia Ramos pleaded guilty to transportation or sale of cocaine. She was sentenced to three years in prison. Defendants filed timely notices of appeal.[2]

DISCUSSION

I. *The Affidavit in Support of the Wiretap Application**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

II. *Statutory Authorization*

A wiretap overhears all sides of all communications of all transmissions made by or to all persons using the electronic communication device under surveillance. Even when there is probable cause, the wiretap risks overhearing communications unconnected with the facts supporting the finding of probable cause, and therefore implicates the privacy rights of anyone who communicates with the suspect on the tapped electronic communication device. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1499 (1987-1988 Reg. Sess.) as amended Apr. 7, 1988, p. 7.) Because of these privacy interests, attempts to pass wiretap authorization legislation in California were unsuccessful until 1988, even though federal law had authorized wiretapping since 1968 (18 U.S.C. § 2510 et seq.). (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1499 (1987-1988 Reg. Sess.) as amended Apr. 7, 1988, pp. 5-6.) ▮ The California wiretap legislation is modeled after federal law, but is more restrictive. In particular, California imposes additional restrictions on the wiretap application process. (Compare Pen. Code, § 629.50 with 18 U.S.C. § 2516.)

Penal Code section 629.50 provides that an application for a wiretap order shall be made "in writing upon the personal oath or affirmation of the Attorney General, Chief Deputy Attorney General, or Chief Assistant Attorney General, Criminal Law Division, or of a district attorney, to the presiding judge of the superior court or one other judge designated by the presiding judge." The application must include the identity of the officer

---

[2]Defendant Krauss did not file a brief on appeal, but joined in the brief of defendant Munoz. All defendants then joined in each other's briefs.

*See footnote, *ante*, page 239.

making the application and the officer authorizing the application (Pen. Code, § 629.50, subd. (a)) and a statement attesting to a review of the application and the supporting circumstances by the chief executive officer, or his or her designee, of the law enforcement agency making the application (Pen. Code, § 629.50, subd. (c)).

In this case, the written application for the initial pager wiretap was made by Los Angeles District Attorney Gil Garcetti and approved by the Los Angeles County Sheriff's designee, Captain Al Scaduto. The application was submitted to Judge Curtis Rappe, who had been designated by Presiding Judge Robert Parkin to review wiretap applications. Presiding Judge Parkin's January 8, 1997 designation read as follows: "Under the authority of Penal Code section 629,[4] Judge Robert Perry is hereby designated to consider, authorize, and supervise all applications presented pursuant to said section. If Judge Perry is unavailable, then Judge Curtis Rappe, followed by Judge J. Stephen Czuleger." Judge Perry was unavailable, so the wiretap application was taken to Judge Rappe, who issued the order authorizing the wiretap. ■ Defendants contend Judge Rappe was not statutorily authorized to consider the wiretap application, as the statute allowed the presiding judge to designate only one judge, not several judges in succession. We disagree.

■ "We begin with the touchstone of statutory interpretation, namely, the probable intent of the Legislature. To interpret statutory language, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) "'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]'" (*Id.* at p. 633.) "'In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . .'" (*Id.* at p. 634.) "'The words of the statute must be construed in context, keeping in mind the statutory purpose . . . .'" (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].) "'"'If the language [of a statute] is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the [Legislature] . . . .'"'" (*People v. Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].)

■ We conclude the statutory language is not violated, nor is the legislative intent defeated, by Presiding Judge Parkin's sequential designation. At any given time, there is only one judge designated by the presiding

---

[4]The law currently codified at Penal Code section 629.50 was previously codified at Penal Code former section 629.

judge to review wiretap applications. This complies with the statutory language. There are currently more than 400 superior court judges in Los Angeles County. (Gov. Code, §§ 69586, 72602-72602.20.) Given the size of the county, it is reasonable to assume a wiretap application may arise when the judge designated by the presiding judge is unavailable. Advance designation of another judge to act in that situation does not undermine the statute in any way. That the presiding judge designated successive judges was simply an advance provision for the inevitable occurrence of the first designated judge's occasional unavailability.

Although the statutory language is unambiguous, we also consider the legislative intent. The statutory language at issue was first enacted as part of Penal Code section 629 by Statutes 1988, chapter 111, section 2, pages 450-451. The language concerning the designation of one other judge was included in Senate Bill No. 1499 as introduced. Senate Bill No. 1499, however, was not the first attempt to enact wiretap authorization legislation in California. A prior bill, Senate Bill No. 159 (1985-1986 Reg. Sess.), was the source of the "one other judge" language. As introduced, Senate Bill No. 159 provided that application for a wiretap be made "to the presiding judge of the superior court or the judges designated by the presiding judge." (Sen. Bill No. 159 (1985-1986 Reg. Sess.) as introduced Jan. 10, 1985.) A subsequent Senate amendment replaced the words "or the judges designated by the presiding judge" with the language "or one other judge designated by the presiding judge." (Sen. Amend. to Sen. Bill No. 159 (1985-1986 Reg. Sess.) Apr. 10, 1985.)

The legislative history of Senate Bill No. 159 indicates this limitation had two intended purposes. The provision was "designed to prevent judge shopping and foster uniform standards and procedures concerning surveillance applications and orders." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 159 (1985-1986 Reg. Sess.) as amended July 9, 1985, p. 3.) Neither purpose is frustrated by the designation of successive judges. There can be no forum shopping because only one judge is designated at a time. The designation does not allow the prosecution to skip over the first designated judge to choose another judge from a list. The second designated judge may review the wiretap application only when the first designated judge is unavailable. Similarly, there is no risk of a lack of uniformity in enforcement because very few judges will ever be called upon to review wiretap applications. On the contrary, the sequential designation fosters uniformity in enforcement because the same sequence of judges will be consulted whenever the first designated judge is unavailable. The successive designation, which sets out the alternate judges in advance, enhances uniformity because the same order of judges will be consulted when the initially designated judge is unavailable.

The statutory requirement of one other designated judge works in conjunction with other statutory requirements for obtaining a wiretap order to assure that wiretaps will not be issued without probable cause and necessity. The successive designation by the presiding judge of the Los Angeles Superior Court complies with this statutory requirement. Therefore, Judge Rappe was properly authorized to review and approve this wiretap application.

DISPOSITION

The judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

Appellants' petitions for review by the Supreme Court were denied May 23, 2001.