BERZON, Circuit Judge,
with whom Chief Judge THOMAS and Circuit Judge REINHARDT join, except as to Part IV, concurring in part, and dissenting in part:
I respectfully dissent as to the majority’s decision on the actus reus component of California Health and Safety Code § 11352(a). I concur with Respect to the statute’s controlled substance component, with a caveat.
I.
As the Supreme Court has underscored repeatedly, the elements of the statute of conviction must be the sole focus in every application of the categorical or modified *1045 categorical approach. See Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 2248, 2251-52, 195 L.Ed.2d 604 (2016); Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2285, 186 L.Ed.2d 438 (2013). The.Court has emphasized that “elements” in this context is not a diaphanous word but means one thing and one thing only: “the things the ‘prosecution must prove to sustain a conviction.’ ” Mathis, 136 S.Ct. at 2248 (quoting Black’s Law Dictionary 634 (10th ed. 2014)). The elements of a crimé, the Court reiterated, are “what the jury must find beyond a reasonable doubt to convict the defendant” at trial, or “what the defendant necessarily admits when he pleads guilty.” Id. (emphasis" added) (citations omitted).
The Court has explainéd that this focus on what is “necessarily found or admitted,” id. at 2249, is required by three distinct considerations: statutory requirements, constitutional protections, and practical realities. See Descamps, 133 S.Ct. at 2287. First, sentencing .statutes referring to pri- or “convictions” indicate that “Congress intended the sentencing court to look only to the fact that .the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.” Id. (quoting Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)) (internal quotation marks omitted). Second, when a court increases the penalty for a crime based on any fact beyond the fact of conviction, it jeopardizes the Sixth Amendment protections described in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Id. at 2288. Third, an elements-only approach largely saves sentencing courts from the “ ‘daunting’ difficulties and inequities” incident to reviewing old plea colloquies or trial-transcripts, both of which may contain unclear or erroneous references to the factual bases for conviction. Id. at 2289 (quoting Taylor, 495 U.S. at 601-02, 110 S.Ct. 2143).
• “The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or ‘indivisible’) set of elements to define a single crime.” Mathis, 136 S.Ct. at 2248. If an indivisible statute of conviction proscribes more conduct than the generic federal offense, a federal court cannot impose penalties based on that conviction. Id. at 2248-49. But identifying the elements of a statutory crime is harder when statutes have “a more complicated (sometimes called'‘divisible’)' structure.” Id. at 2249. Statutes that list various factors in the alternative, some of which go beyond the generic federal crime, may qualify as divisible, but they also may not. Disjunctively worded statutes may identify several “elements in the alternative, and thereby define multiple crimes,” or may, instead, “enumerate[] various factual' means of committing a single element.” Id. So, when a statute lists alternative factors, a sentencing court needs to figure out which was intended—an enumeration of alternative elements or of various means.
That determination is critically important. If the factors are separate elements, then the sentencing court may employ a “modified categorical approach” and look at “a limited class of documents” in the record of conviction “to determine what crime, with what elements, a defendant was convicted of.” Id. This modified approach is not allowed, however, if the statute lists “different methods of committing one offense.” Id. at 2254 (quoting Descamps, 133 S.Ct. at 2285 n.2). Rather, in that circumstance, the. statute must be treated as indivisible and held categorically overbroad. See Descamps, 133 S.Ct. at 2292-93.
Applying the modified approach without carefully ensuring that a statute sets out alternative elements, not merely alternative means, allows a court to “go beyond *1046 identifying the crime of conviction to explore the manner in which the defendant committed that offense.” Mathis, 136 S.Ct. at 2252. Premature application of the modified approach thus “raise[s] serious Sixth Amendment concerns.” Id. Accordingly, determining whether a disjunctively worded statute refers to alternative elements or alternative means is subject to the Court’s more general “demand for certainty when identifying a generic offense.” Shepard v. United States, 544 U.S. 13, 21-22, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); see also Mathis, 136 S.Ct. at 2257. When uncertainty exists, federal courts must err on the side of caution. See generally Mathis, 136 S.Ct. at 2257.
The practical reasons underlying the categorical approach help illuminate the special dangers of improperly applying the modified approach, particularly in cases like this one, where the past conviction resulted from a guilty plea, not a trial. As the Court noted in Descamps, defendants “often ha[ve] little incentive to contest facts that are not elements of the charged offense—and may have good reason not to.” 133 S.Ct. at 2289. At plea hearings, defendants may conclude it is in their best interest not to “irk” prosecutors or the court “by squabbling about superfluous factual allegations” irrelevant to those proceedings. Id. So, because plea records are among the documents a sentencing court can examine once use of the modified approach is clearly warranted, see Shepard, 544 U.S. at 20, 125 S.Ct. 1254, over-eager deployment of the modified approach can lead to sentencing enhancements based on information that “may be downright wrong,” and can “deprive some defendants of the benefits of their negotiated plea deals,” Descamps, 133 S.Ct. at 2289.
To aid in avoiding these potential problems and concerns, the Court in Mathis provided detailed instructions regarding how to apply the categorical approach to disjunctively worded statutes so as to achieve the requisite “demand for certainty,” 136 S.Ct. at 2257 (citation omitted), as to whether, to sustain a valid conviction, a particular factor must - be found unanimously by a jury or admitted. See id. at 2256-57. These instructions require us to look, first, to authoritative state law sources concerning whether each disjunc-tively listed item is a separate element or just a possible means of committing the same crime. Our inquiry is over if “a state court decision definitively answers the question,” or if “the statute on its face ... resolve[s] the issue.” Id. at 2256 (emphasis added). Where those authoritative sources of state law fail to provide a definite answer, Mathis instructs courts to take a limited “peek” at the record of conviction to help determine whether the statute is divisible. See id. (citation omitted).
The majority opinion here ignores the Court’s repeated direction to focus only on what must be admitted or proven beyond a reasonable doubt to sustain a conviction. See id. at 2254, 2257. And it fails fully to apply Mathis’s instructions. The majority instead rests its divisibility analysis as to the actus reus component of section 11352(a) on a state court decision that fails to provide a definitive answer to the question whether each enumerated act is a separate element defining a separate crime under the statute. And it does not reach Mathis’ s third instruction.
After applying all three steps outlined in Mathis, I conclude that it is most likely that the enumerated actions are different means of committing the offense stated in section 11352(a), not alternative elements, but that there are some contrary indications. To decide whether the modified categorical approach may be applied in this case, we would have to make a fundamental legal determination about an unresolved, *1047 repeatedly arising, and independently important state law issue. I therefore suggest that a better approach in this circumstance would be to certify to the California Supreme Court the question:
To support a conviction under Health and Safety Code section 11352(a)’s proscription of “transporting], importing] into this state, selling], furnishing], administering], or giving] away, or offering] to transport, import into this state, sell, furnish, administer, or give away, or attempting] to import into this state or transport,” certain referenced controlled substances, must a jury find beyond a reasonable doubt, or must a defendant necessarily admit, that the defendant committed one particular listed activity, e.g., “selling],” with respect to the controlled substance; or can a defendant be convicted where the jury finds, or the defendant admits, that one or more of the enumerated acts applies, without specifying which?
II.
To reach its conclusion regarding the divisibility of the actus reus component of section 11352(a), the majority relies almost exclusively on the lead opinion in People v. Patterson, 49 Cal.3d 615, 262 Cal.Rptr. 195,778 P.2d 549 (1989).[1] Patterson, in isolation, could be read as the majority suggests, by extrapolation based on the use of the term “element.” But the precise issue we must decide for purposes of applying the modified categorical approach was, as the majority opinion recognizes, not addressed in Patterson. Maj. at 1041-42. That question, again, is what Martinez-Lopez necessarily admitted in his guilty plea—i.e., what the prosecutor would have been required to prove beyond a reasonable doubt at trial to secure a conviction under Health and Safety Code section 11352(a). See Mathis, 136 S.Ct. at 2249.
As Patterson does not squarely address the issue before pur court today, the majority cannot—and, indeed, does not—say that the “state court decision definitively answer[ed] the question.” Id. at 2256. Yet, once more, for our present purposes, to apply the modified categorical approach a federal court must be able to say that a state law decision dispositively answers the means-or-elements question. The majority’s reliance on Patterson is thus improper under Mathis. See id.
Applying an appropriate Mathis analysis, the divisibility of section 11352(a)’s ac-tus reus requirement cannot be definitively determined by looking at other authoritative sources of state law either—most of which point in the opposite direction from Patterson—or by taking a “peek” at the conviction documents. I consider first the shortcomings of the state law relied upon by the majority and then proceed to review (1) other authoritative sources of California law and (2) the conviction record.
*1048 A.
That Patterson does not provide a definitive answer to our question here is evident for three-reasons. First, the lead opinion in' Patterson does not engage with the then-existing California case law that did address the pertinent question here—what facts must be proven beyond a reasonable doubt to sustain a conviction under section 11352(a). Second, no California appellate court has cited or relied on Patterson when examining the issue actually before us. Third, the felony-murder rule’s “viewed-in-the-abstract” test for “inherently dangerous” felonies is dissimilar, in several fundamental ways, from the elements-only categorical approach the Court has prescribed as the only way to meet “Taylor's demand for certainty.” Mathis, 136 S.Ct. at 2257 (citation omitted).
[[Image here]]
The majority in Patterson did not discuss the essential elements that must be proven to sustain a conviction under California Health and Safety Code section 11352(a) or its predecessors, former sections 11500 and 11501. Although there were several then-existing appellate court holdings relevant to that issue, the lead opinion in Patterson did not mention any of them. And although Justice Mosk, dissenting in Patterson, did discuss that issue and the cases concerning it at length, the Patterson lead opinion did not engage at all with the dissent's presentation in that regard.
For example, the Patterson majority made no mention of People v. Cornejo, 92 Cal.App.3d 637, 155 Cal.Rptr. 238 (1979), which had held that a “jury properly convicted” the defendant of a “violation of Health and Safety Code section 11352, sale of heroin,” even though the defendant had made no sale but instead gave away a small sample. Id. at 240, 250. Nor did Patterson discuss People v. Holquin, 229 Cal.App.2d 398, 40 Cal.Rptr. 364 (1964), disapproved of on other grounds by People v. Daniels, 14 Cal.3d 857, 122 Cal.Rptr, 872, 537 P.2d 1232, 1235-36 (1975). Holquin examined the legislative history and statutory language of section 11352(a)’s immediate predecessor, section 11501, and held that it
was enacted to prevent traffic in narcotics and to prevent a narcotic from getting into the hands of those having no right to possess it. To that end the section makes it a criminal offense to effect an illegal change of possession of a narcotic, regardless of the means used to accomplish the transfer....
The language of the statute makes no distinction among the various means for change of possession; the crime ■ is the same whether the transfer of a narcotic is accomplished by selling, furnishing, administering, or giving it away.
Id. at 402 (emphasis added). The Patterson majority similarly left out any mention of People v. Pierre, 176 Cal.App.2d 198, 1 Cal.Rptr. 223 (1959), which had held it was “[i]n no respect .,. improper procedure” for the charging document, jury instructions, and verdict all to have stated the offense under section 11500 as selling, furnishing, or giving away a named narcotic, as the specification of the act (selling, furnishing, or giving away) was not necessary. Id. at 226.
Based on a review of these pre-Patter-son cases, Justice Mosk concluded in his partial dissent in Patterson that the actus reus component of section 11352(a) lists alternative means, not elements. 262 Cal.Rptr. 195, 778 P.2d at 566. Far from “expressly rejecting]” that contention, as the majority here maintains, see Maj. Op. 1042, the Patterson majority is entirely silent on the specific question for which we now require an answer—whether a particular actus reus variant in section 11352(a) *1049 must be proven to a jury or admitted by the defendant.
The majority steps in to offer a voice where Patterson was mute, answering- the question left unanswered by Patterson. Patterson overruled Cornejo and Pierre, the majority proclaims, to the extent those two cases conflict with Patterson’s holding, with regard to the issue before us—an issue, again, not directly involved in Patterson. Maj. Op. 1042-43. California courts do not agree with that statement, unless “the extent that [the older cases] conflict” with Patterson is trifling. For instance, in People v. Haider, 34 Cal.App.4th 661, 40 Cal.Rptr.2d 369 (1995), the California Court of Appeal cited Cornejo to affirm the defendant’s one-count conviction .- .for “selling or giving away” cocaine in violation of section 11352(a). “Although [the defendant] had only two dollars on. his person when arrested,” the Court of Appeal held there was “substantial evidence that [Haider] sold or gave away cocaine.” Id. at 374. See also cases cited infra Section II.A.2.
As to the post-Patterson casés that parallél Cornejo, Holquin, and Pierre with regard to the question that is critical to divisibility, the majority announces that they are “erroneous,” as in conflict with Patterson. Maj. Op. 1042-43. The majority, in short, reads into Patterson a ruling that is not there and then reconciles its conclusion with conflicting California cases by pronouncing them bad law. Far from pointing to a definitive answer given by an authoritative source of state law, the majority decides for itself what California law is on the critical question. That activist approach to identifying the essential elements under a state statute is not sanctioned by Mathis or any other pertinent opinion.
2.
The majority does more than overstep the bounds of a Mathis analysis; it quite probably comes to the wrong conclusion concerning'whether California courts regard Patterson as deciding the specific issue we face. Not a single California appellate court has cited Patterson—let alone concluded it was dispositive—when considering whether a particular actus reus from section 11352(a)’s enumerated list must be charged and proven.[2]
The California Supreme. Court, for example, made no mention of Patterson when it decided that reversal was. not required where evidence was sufficient to support a conviction for “selling or transporting cocaine” in violation of section 11352 under only one of the two “theories” presented by the prosecution. See People v. Guiton, 4 Cal.4th 1116, 17 Cal.Rptr.2d *1050 365, 847 P.2d 45, 54 (1993). Nor was Patterson referenced in People v. Lynch, 2006 WL 2988461, at *2 (Cal. Ct. App. Oct. 20, 2006) (unpublished), which held that “selling or furnishing cocaine are merely two different ways or methods by which [the defendant] might have committed the particular crime.”[3] Similarly, there is no discussion of Patterson in In re W.J., 2003 WL 1880159, at *1 (Cal. Ct. App. Apr. 16, 2003) (unpublished). There, the Court of Appeal affirmed a minor’s commitment order for “sale or transportation” of cocaine base in violation of section 11352(a). The court also rejected the minor’s contention that possession for sale of cocaine base was necessarily included in the charged section 11352(a) offense, because the language of the charge tracked section 11352(a)’s statutory definition and that section “may still be violated by one who transports narcotics without possession of them.”[4] Id. at *2.
Once again, it is presumptuous for a federal court to deem these state court decisions incorrect as to state law. I would adopt a reading that, instead of blithely declaring the post-Patterson state decisions on the directly pertinent issue mistaken, reflects the comity due state courts when faced with state law questions. Doing so, I would conclude that the post-Patterson decisions indicate, at a minimum, that, on the question the Court requires us to answer here—i.e., whether a particular ac-tus reus must be proven beyond a reasonable doubt—Patterson is not dispositive. And I would also conclude that the California Supreme Court, if asked directly about the question we face, might well decide that the actus reus factors listed in section 11352(a) are interchangeable means of committing a single offense, so that no one of them need be found by a jury or admitted in a guilty plea.
3.
It should be enough that California courts do not see Patterson as relevant, let alone controlling, precedent regarding the charging and conviction issues we must decide. I note in addition that it is unsurprising that Patterson has not been relied upon as authoritatively stating California law on the question here at issue, as there are bases for deciding the issue before the court in Patterson and the issue in this case differently.
For one thing, when addressing the Patterson issue—i.e., the proper application of the felony murder doctrine—California courts have used “means” and “elements” interchangeably in defining and applying the “viewed-in-the-abstract” approach to delineating “inherently dangerous” crimes. In People v. Henderson, 19 Cal.3d 86, 137 Cal.Rptr. 1, 560 P.2d 1180 (1977), over *1051 ruled on other grounds by People v. Flood, 18 Cal.4th 470, 76 Cal.Rptr.2d 180, 967 P.2d 869 (1998), for instance, the California Supreme Court examined the four factors that could elevate false imprisonment to a felony (namely, violence, menace, fraud, or deceit) and concluded that “the felony offense viewed as a whole in the abstract is not inherently dangerous to human life.” Id., 137 Cal.Rptr. 1, 560 P.2d at 1184. “While the elements of violence or menace by which false imprisonment is elevated to a felony may involve danger to human life,” Henderson held, “one who commits felony false imprisonment by means of fraud or deceit presents no danger significantly greater than one who commits misdemeanor false imprisonment.” Id. (emphasis added). That cross-usage indicates that the distinction between means and elements is not at the forefront in the “inherently dangerous felony” context. But it is when deciding what must be proven to a unanimous jury or admitted by the defendant, the question here.
Moreover, although the principles underlying both Mathis and Patterson reflect concern about limiting certain collateral effects, the very different contexts implicate not the same feared impacts but different ones. Notably, not one of the important grounds underpinning the Court’s categorical approach is provided by the California Supreme Court as a reason for the “viewed-in-the-abstract” test deployed in California’s second degree felony-murder cases. See Descamps, 133 S.Ct. at 2287-89.
First, the “inherently dangerous felony” issue in Patterson and similar cases, however decided, does not implicate the Sixth Amendment’s right to trial by jury. Rather, in the felony-murder context, courts are concerned about fact-specific circumstances that might “poison the well” when a judge considers as a legal question whether a defendant is exposed to a grave additional charge and conviction, murder. In that context, the “viewed-in-the-abstract” analysis
is compelled because there is a killing in every case where the rule might potentially be applied. If in such circumstances a court were to examine the particular facts of the case prior to establishing whether the underlying felony is inherently dangerous, the court might well be led to conclude the rule applicable despite any unfairness which might redound to so broad an application: the existence of the dead victim might appear to lead inexorably to the conclusion that the underlying felony is exceptionally hazardous.
Patterson, 262 Cal.Rptr. 195, 778 P.2d at 554 (quoting People v. Burroughs, 35 Cal.3d 824, 201 Cal.Rptr. 319, 678 P.2d 894, 897-98 (1984)) (internal quotation mark omitted), overruled on another ground by People v. Blakeley, 23 Cal.4th 82, 96 Cal.Rptr.2d 451, 999 P.2d 675, 679 (2000).
Additionally, none of the practical pitfalls associated with tracking down, reviewing, and working from old court records, often from another jurisdiction, present themselves in the felony-murder context. Instead, in cases similar to Patterson, any collateral consequences generally arise in the same criminal proceeding. Thus, issues that may arise if the dangerousness of an underlying felony is determined erroneously can generally be corrected on direct appeal or remand. In Patterson, for instance, the court held that if the trial court concluded on remand that the felony Patterson committed was indeed inherently dangerous, the “defendant must be allowed to withdraw his guilty plea to the charges of violating Health and Safety Code section 11352, with credit for any interim time served.” 262 Cal.Rptr. 195, 778 P.2d at 557. In the present context, in contrast, any doubts *1052 we have about what was decided in the earlier case cannot be tested by referring the issue back to the original trial (or appellate) court. ,
Relatedly, and perhaps most significantly, in the context of the felony murder doctrine’s “inherently dangerous felony” rule, no California statute requires that the courts look only to convictions, as opposed to the facts underlying the offenses committed. Cf. Mathis, 136 S.Ct. at 2252 (comparing sentencing statutes that refer to “an offense ... committed,” and those that refer to convictions and thereby require sentencing courts to “focus[ ] on only ‘the elements of the statute of- conviction’”) (emendation in original) (citations omitted). Presumably because there is no limitation to a “conviction,” once a California court decides that a given .statute, states separate felonies for the purposes of the felony-murder rule, it may look to the evidence or factual theories presented in a case to determine the variant or type of felonious conduct at issue. And, in practice, when drug statutes like section 11352(a) are at issue, application of the special felony-murder doctrine rules often requires a look to the facts of a case to determine whether or not the offense committed was one of the “inherently dangerous” ones enumerated in the statute. Charging documents and abstracts of judgment often do riot specify any particular act. See, e.g., the cases cited supra note 4.
In People v. Taylor, 6 Cal.App.4th 1084, 8 Cal.Rptr.2d 439 (1992), for example, a California Court of Appeal examined whether furnishing or selling PCP was inherently dangerous under the new standards outlined in Patterson. The defendant had been charged with and convicted of “seven counts of sale, furnishing, or transportation of PCP,” in violation of a statute that, much like section 11352(a), proscribed the “importation, transportation, furnishing, administering, sale and giving away of’ a controlled substance. Id. at 441-42 & n.2; see also Cal. Health & Safety Code § 11379.5(a). So why did the Court of Appeal decide that the relevant inquiry for the “inherently dangerous felony” test involved only the “selling or furnishing” of PCP, not its “transportation”? See id. at 442-43. Because the California courts could, and did, look to the facts of the. case, concluding that “[although the statute [of conviction also] encompasses importation, transportation, ... administering, ... and giving away of PCP ... the evidence [in the case] supported a sale as well as furnishing.” Id. at 442 n.2. As the evidence implicated the selling or furnishing aspects of the offense, the court did not concern itself with [he broader statutory crime of conviction. But, as— once again—the Supreme Court has stressed repeatedly, most recently in Des-camps and Mathis, in applying the categorical approach, federal courts are “barred from making,” as the California court did in Taylor, any fact-based determination about “what the jury in a prior trial rhust have accepted as the theory of the crime.” Mathis, 136 S.Ct. at 2252 (quoting Descamps, 133 S.Ct. at 2288).
* * *
In sum, the Patterson majority made no attempt to align its holding with existing California case law directly addressing the requisites of section 11352(a) for charging, jury instruction, and conviction purposes, i.e., the pertinent issue here. And no California appellate court has ever cited Patterson in any analysis of section 11352(a)’s elements, or those of similar statutes. As California courts have not taken that step, we should not hold that Patterson’s felony-murder holding must be extended to the entirely distinct issue we have before us.[5]
*1053 B.
Nor does other California case law provide a definitive answer to our ■ question.
Most promising, perhaps, is People v. Guiton, 4 Cal.4th 1116, 17 Cal.Rptr.2d 365, 847 P.2d at 46, 51-54; In Guiton, the California Supreme Court considered whether a conviction for “selling or transporting cocaine” in violation of section 11362 could be affirmed where the evidence was insufficient to show a “sale,” but was sufficient to prove, beyond a reasonable doubt, that the defendant had “transported” the drug. In its analysis, Guiton highlighted that the jury had been instructed that unanimity was required as to the criminal “act” the defendant committed.[6] Id., 17 Cal.Rptr.2d 366, 847 P.2d at 51.
But Guiton did not specify the relevant “act” in that case. 17 Cal.Rptr.2d 365, 847 P.2d at 51. Instead, Guitón discusses transportation and sale as “alternative theories”—not alternative elements—one of which was unsupported by the evidence.[7] The court then held that the sufficient evidence of the “independently valid ground of transporting cocaine” was enough to assume the jury’s verdict valid. Id.
Guitón may indicate that the actus reus component of section 11352(a) defines different acts requiring juror unanimity. But Guitón’s discussion may also indicate that, if both “theories” had been supported and Guitón had been charged and convicted in two different counts, the convictions would not survive because “dual convictions for the same offense based on alternate legal theories would necessarily be prohibited.” People v. Vidana, 1 Cal.5th 632, 206 Cal.Rptr.3d 556, 377 P.3d 805, 817 (2016); see also People v. Roberts, 40 Cal.2d 483, 254 P.2d 501 (1953), discussed immediately below. Guitón thus leaves the key question herb unanswered.
Other California cases are in greater tension with the majority’s conclusion. Most notably, the California Supreme Court recently breathed new life into People v. Roberts, which held that possession, sale, and transportation of a controlled substance charged under a single statute constituted only one criminal offense when completed in the same course of conduct. See People v. Correa, 54 Cal.4th 331, 142 Cal.Rptr.3d 546, 278 P.3d 809, 815 (2012). As Correa observed, the defendant in Roberts had been convicted on three counts' of “violating [section 11352(a)’s predecessor] in three different ways on the same occasion’by illegally transporting, selling, and possessing heroin.” Id. Roberts held that tbé three acts were improperly “charged and adjudged as sepárate crimes,” and reversed the conviction as to two of the three counts. 254 P.2d at 505. Because the “acts constituted] but one offense when committed by the same person at the same time,” the three counts “charge[d] but one crime” and could support only one conviction. Id. (quoting People v. Clemett, 208 *1054 Cal. 142, 280 P. 681 (1929)) (emphasis added).
Correa’s clarification was necessary because Roberts’s holding had been entwined for some years in the case law interpreting California Penal Code § 654, which concerns the propriety of multiple punishments.[8] See Correa, 142 Cal.Rptr.3d 546, 278 P.3d at 813-14; see also Neal v. California, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839, 843 n.1 (1960). As Correa explained, Roberts “involved multiple convictions that were held to be improper without any reliance on section 654,” Correa, 142 Cal.Rptr.3d 546, 278 P.3d at 813 (emphasis in original), thereby reaffirming the Roberts holding as relevant—indeed, arguably controlling—here.
More recently, in Vidana, the California Supreme Court emphasized that, although multiple charges for the “same offense” are generally permissible, “dual convictions for the same offense based on alternate legal theories” are not. 206 Cal.Rptr.3d 556, 377 P.3d at 816-17 (emphasis added). Roberts had held that the various actions enumerated in section 11352(a)’s predecessor statute together stated “but one offense,” so that “when committed by the same person at the same time,” a complaint that states two or more of the actus reus alternatives “charge[s] but one crime.” 254 P.2d at 505 (citation omitted). In distinguishing between multiple convictions based on charges of different offenses and those based on multiple charges that state a single offense, Roberts is fully consistent with Vidana, again confirming its continued vitality.
In my view, the California Supreme Court’s recent revitalization of Roberts comes much closer than Patterson to definitively answering the question we face here. Because the state court decisions can be viewed as pointing in more than one direction (although much more strongly in one than in the other), all that is clear, in my view, is that California courts have not definitively determined that one of the enumerated acts in section 11352(a) must be found unanimously by a jury or admitted by the defendant.
C.
Mathis further instructs that a “statute on its face may resolve the [means/elements] issue” by defining different punishments for the statutory alternatives or by “identifyfing] which things must be charged (and so are elements) and which need not be (and so are means).” 136 S.Ct. at 2256. Section 11352(a) on its face provides no clear answer regarding the divisibility of the actus reus component. It gives no notice of what must be charged or proven to sustain a conviction and does not define different levels of punishment for different types of acts. See Cal. Health & Safety Code § 11352(a).
*1055 D.
Finally, where, as here, there is no definitive answer from authoritative sources of state law, Mathis instructs reviewing courts to “peek” at the conviction record as an indication of whether the statute lists separate elements or merely separate means. 136 S.Ct. at 2257 (citation omitted). As Mathis explained, if the indictment and jury instructions both refer to a disjunctive list of factors or use a vague “umbrella term” (e.g., “premises”), there is “as clear an indication as any that each alternative is only a possible means of commission.”[9] Id. at 2257. On the other hand, if the indictment and jury instructions “refer-enc[e] one alternative term to the exclusion of all others,” that “could indicate” that the item is part of list of separate elements. Id. Notably, the Court highlights that “such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy ‘Taylor's demand for certainty’ when determining whether a defendant was convicted of a generic offense.” Id. (citation omitted).
Turning then to the record documents, I conclude that they strongly indicate that the actus reus factors are means of committing a section 11352(a) offense, not separate elements. Martinez-Lopez’s felony complaint charged him with “the crime of SALE/TRANSPORTATION/OFFER TO SELL CONTROLLED SUBSTANCE, in violation of HEALTH AND SAFETY CODE SECTION 11352(a).” The complaint went on to allege that Martinez-Lopez “did unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance.” The abstract of judgment noted that Martinez-Lopez was sentenced to a four-year term of imprisonment for “SALE/TRANS. COCAINE BASE,” and to an additional three-year term for an enhancement based on a prior offense. In Martinez-Lopez’s plea colloquy, the prosecutor stated the factual basis for the plea as “on or about December 31, 1997, you did sell cocaine base—.42 grams of cocaine base.” Martinez-Lopez affirmed that factual basis.[10]
Although the plea colloquy transcript specifies the factual basis for conviction as “selling,” the conviction documents do not. Under the categorical approach, the key issue is, once again, the elements of the crime of conviction. An admission to a specific factual basis for the conviction says little about the scope of the statutory offense of conviction, as the defendant often admits to the means by which he committed a broad element of the offense. See supra Part I, pp. 24-24 (discussing why factual admissions cannot be independently controlling under the categorical approach if the offense has a broad element that can be committed in various ways). A sentencing court cannot tell whether the admitted factual basis is premised on an admission of a specific element of the crime—sale—or, more likely, simply provides a more detailed description of the conduct or means by which the broader crime charged and reflected in the abstract of judgment was committed.
*1056 The “peek” at the record in this case thus leaves me where the other Mathis clues to resolving the means/element question did—with the strong likelihood that the various acts described in section 11352(a) are interchangeable means of committing the offense.
HI.
, Mathis indicated that, in most cases, federal sentencing courts should readily be able to answer the question we face today by looking only to authoritative sources of state law or, if necessary, peeking at the record of conviction. 136 S.Ct. at 2256-57. Indeterminacy after both examinations, it posited, would be “more the exception than the rule.” Id. at 2257.
As I understand the line of cases culminating in Mathis, the certainty requirement cuts in a specific direction: Where there is indeterminacy after all the modes of inquiry prescribed in Mathis are exhausted, a federal court must treat the state statute as indivisible with regard to’ the contested generic element, and so may not apply the modified categorical approach. See id. (explaining that where the prescribed sources do not “speak plainly, ... a sentencing judge will not be able to satisfy ‘Taylors demand for certainty" when determining whether a defendant was convicted of a generic offense” (quoting Shepard, 544 U.S. at 21, 125 S.Ct. 1254)). Applying that precept, we could here conclude that because, for reasons I have given, there is no certainty that the actus reus enumeration in section 11352(a) states elements rather than means, we should treat that aspect of the statute as not divisible. We would then conclude that we cannot apply the modified categorical approach.
In this particular instance, however, I believe our best route is to ask the California Supreme Court to provide a definitive answer to the precise question presented in this case. Certifying means-or-elements questions to state courts ordinarily should not be necessary, for the reasons indicated in Mathis. Here, the circumstances are not ordinary, for three related reasons.
First, these California drug convictions arise exceedingly frequently in federal cases applying the categorical approach.
Second, our question, although of exceptional importance in federal criminal (and immigration) cases, is not, at the end of the day, a question of federal law. Instead, despite the majority’s eagerness to conclude otherwise, we are faced with questions of unresolved state law. Whether section 11352(a)’s actus reus requirement is divisible under Mathis involves purely state law questions on charging and jury practices. See 136 S.Ct. at 2256. “Through certification of ,.. unsettled questions of state law for authoritative answers by a State’s highest court, a. federal court may save ‘time, energy, and resources and hel[p] build a cooperative judicial federalism.’ ” Arizonans for Official English v. Arizona, 520 U.S. 43, 77, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting Lehman Brothers v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)). Here, in particular, the “more cautious approach [of certification is] in order,” id., because, “truth be told, [I] find the state decisions on [the question] contradictory and confusing,” Descamps, 133 S.Ct. at 2291.
Third, whichever way we decide the undecided state law questions, there will be substantial practical problems for state courts. As such convictions under section 11352(a) and similar drug statutes so often occur in California, the answer to the question whether each factor listed in the statute’s actus reus component must be proven to a jury or specifically admitted in a guilty plea is. of great consequence in the state court system. If we accept the majority’s answer, then prosecutors, defendants, *1057 and courts in California would be left with some state court cases saying that defendants can be charged and convicted for only one offense for all the enumerated conduct, and an en banc panel of this court saying that those cases are erroneous and that each enumerated act is a' separate element of a separate offense. We would then invite an influx of habeas appeals relating, for example, to duplicitous charges, convictions sustained despite failure to ensure jury unanimity, or ambiguous guilty pleas. Alternatively, if California courts did follow the majority’s conclusion here, the state will have to change widespread charging and trial practices.
If we instead followed my Suggestion that the majority’s conclusion is at the very least highly questionable and that section 11352(a) must therefore be treated as indivisible for federal purposes, confusion could also follow in this oft-litigated area. As our conclusion would only be that the California law as to the unit of charge and conviction is unclear, we might encourage widespread challenges to California convictions in which the specific act committed is not unanimously found or admitted.
I would therefore certify to the California Supreme Court the question enunciated at the outset of this opinion. See Cal. R. Ct. 8.548.
IV.
I concur, with a caveat, in the majority’s decision on the controlled substances requirement.
The cases- cited by the majority as to that aspect of section 11352(a)—In re Adams, 14 Cal.3d 629, 122 Cal.Rptr. 73, 536 P.2d 473 (1975), People v. Chung, 237 Cal.App.4th 462, 187 Cal.Rptr.3d 873 (2015), and People v. Monarrez, 66 Cal.App.4th. 710, 78 Cal.Rptr.2d 247 (1998)— did not expressly address the validity of multiple convictions under California Health and Safety Code § 11352 for single acts or courses of conduct involving different controlled substances. But, as the majority concludes, in addressing whether multiple punishments. should be upheld, the courts appear to have necessarily assumed that the multiple convictions were proper under California law. I also observe that the charging and conviction documents in California appear routinely to specify a particular drug, the opposite of the practice with regard to the enumerated acts. See, e.g., the cases cited supra note 4.
People v. Martin, 169 Cal.App.4th 822, 86 Cal.Rptr.3d 858, 861 (2008), does not support a contrary conclusion. In Martin, the defendant was charged with pbssession of a -controlled substance, cocaine base, in violation of section 11350(a). The jury received written jury instructions that specified “cocaine,” instead of “cocaine base,” as the controlled substance at issue. The oral instructions, on the other hand, correctly noted “cocaine base.” In holding that any instructional error was harmless, the Court of Appeal highlighted that “[t]he jury was correctly instructed on the elements of the crime of possession of a controlled substance.”
I do, however, have one caution regarding, the majority’s controlled substance holding: There have been changes in related California legal principles in recent years that may have undermined the assumptions in Adams as to whether a specific controlled substance is an element that must be proven beyond a reasonable doubt to a jury or admitted by the defendant. For many years, including when Adams was decided, California courts understood Penal Code section 954 to be broadly permissive of multiple convictions wherever multiple charges were proper, including when charges stated “different statements of the same offense.” See Pear *1058 son, 228 Cal.Rptr. 509, 721 P.2d at 596; People v. Tideman, 57 Cal.2d 574, 21 Cal.Rptr. 207, 370 P.2d 1007, 1011 (1962). On that understanding, the assumption in Adams that there could be separate convictions under section 11352 for each particular controlled substance was appropriate.
The California Supreme Court has recently clarified, however, that Penal Code section 954 is not as broad as believed at the time of Adams. In particular, multiple convictions cannot stand when charges simply state “different statements of the same offense,” as opposed to “different offenses of the same class of crimes.” Vidana, 206 Cal.Rptr.3d 556, 377 P.3d at 816; see also Cal. Pen. Code § 954. No California court has yet addressed whether Vida-na changes the multiple convictions analysis in cases involving drugs of various types. Until California courts address that issue, I see no reason to question the weight of California authority, as well as common practice, which indicate that a specific controlled substance generally must be named—and usually is—in both the criminal charge and the jury instructions.
I therefore concur in the majority’s decision as to the divisibility of the controlled substance component. If, after Vidana, California courts revise the treatment of multiple charges and convictions based on one criminal activity involving multiple types of controlled substances, we might have to revisit this issue.
⅜ ⅜ ⅜ ⅜ ⅝
I respectfully dissent from the majority’s decision with respect to Part II.B. and, to the extent it relies on the conclusions of Part II.B, Part II.C.
I concur in Part II.A. of the decision.

. Unless otherwise noted, references to Patterson or the Patterson majority refer to the lead opinion authored and signed only by Justice Kennard. Three justices concurred in the judgment, noting agreement with maintaining the felony-murder rule by "refus[ing] to accept defendant’s invitations (1) to abrogate the doctrine entirely, or (2) to permit consideration of other felonies not involved in the case in determining the inherent dangerousness of the defendant’s own offense.” 262 Cal.Rptr. 195, 778 P.2d at 558 (Lucas, C.J., concurring in part and dissenting in part). Although the concurrence authored by Chief Justice Lucas did not explicitly sign on to the lead opinion's reasoning on the second point, I am willing to assume, for present purposes, the concurrence’s basic agreement with Justice Kennard’s reasoning as the premise for its assertion that "other felonies not involved in the case” should not be considered. Id. I note, however, that the absence of a true majority opinion in Patterson is yet one more reason for certifying the issue I enunciated at the outset, see supra Part I.

. Of the 95 California Supreme Court and Courts of Appeal cases citing Patterson, all but four do so to discuss the proper application of the second degree felony-murder or implied . malice doctrines. None of the four exceptions concern section 11352 or similar statutes. See In re Christian S., 7 Cal.4th 768, 30 Cal.Rptr.2d 33, 872 P.2d 574, 585 (1994) (Mosk, J., concurring) (citing Patterson as part of a wider discussion about the “unnecessary complications in California homicide law”); People v. Sargent, 60 Cal.App.4th 137, 70 Cal.Rptr.2d 203, 205, 214 (1997) (Puglia, J., dissenting) (referencing Patterson for proposition that "different standards of c.ulpability apply depending on the context in which the proscribed conduct takes place," in a case relating to mens rea requirements under a felony child abuse statute that includes multiple “branches ... of prohibited conduct,” each marked by bracketed numbers), rev’d, 19 Cal.4th 1206, 81 Cal.Rptr.2d 835, 970 P,2d 409 (1999); People v. McGee, 2005 WL 859411, at *13 (Cal. Ct. App. Apr. 15, 2005) (unpublished) (same, for general proposition that “the Legislature has broad power to define crimes,” such as by amending substantive law to remove an element of an offense); In re Andrew R., 2002 WL 31529056, at *4 (Cal. Ct. App. Nov, 13, 2002) (unpublished) (same, for its discussion of factors elevating offense of false imprisonment to felony),

. ‘'[W]e may consider unpublished state decisions, even though such opinions have no precedential value.” Emp'rs Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003). In this case, where actual charging and conviction practices are pertinent, unpublished cases are relevant as indicators of commonly accepted state court practices.

. Additionally, many other state court decisions on other issues note, without any concern, convictions for "transportation or sale” of a controlled substance in violation of section 11352(a). See, e.g., People v. Keith, 235 Cal.App.4th 983, 185 Cal.Rptr.3d 768, 769 (2015); People v. Valencia, 226 Cal.App.4th 326, 172 Cal.Rptr.3d 1, 2 (2014); People v. Fielder, 114 Cal.App.4th 1221, 8 Cal.Rptr.3d 247, 250 (2004); People v. Superior Court, 113 Cal.App.4th 817, 7 Cal.Rptr.3d 74, 76 (2003); People v. Munoz, 87 Cal.App.4th 239, 104 Cal.Rptr.2d 470, 471 (2001); People v. Navarez, 169 Cal.App.3d 936, 215 Cal.Rptr. 519, 528 (1985); see also People v. Martinez, 2017 WL 999246 at *4 (Cal. Ct. App. March 15, 2017) (unpublished); People v. Keeney, 2016 WL 1089392 at *1-2 (Cal. Ct. App. March 21, 2016) (unpublished).

. Notably, Patterson emphasized that the "anachronistic” and “disfavored” felony-murder rule “deserves no extension beyond its *1053 required application.” 262 Cal.Rptr. 195, 778 P.2d at 554 (internal quotation marks and citations omitted).

. Under California law, “the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,’ but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.’ ” People v. Russo, 25 Cal.4th 1124, 108 Cal.Rptr.2d 436, 25 P.3d 641, 647 (2001) (quoting People v. Perez, 21 Cal.App.4th 214, 26 Cal.Rptr.2d 691, 696 (1993)) (emphasis added),

. In considering theRarmlessness of instructing the jury on an unsupported ground, Guitón mentions 'that the prosecutor at trial noted to the jury that they had to agree on at least one of the theories presented, 17 Cal.Rptr.2d 365, 847 P.2d at 54 n.2. Guiton did not, however, affirmatively subscribe to that view.

. California Penal Code section 654 bars multiple punishments when a single course of conduct is criminalized under various sections of California's criminal codes. Its counterpart regarding multiple charges and convictions, Penal Code section 954, allows the state to charge a defendant in separate counts for "different offenses connected together in their commission,” "different offenses of the same class of crimes,” or "different statements of the same offense,” and to convict a defendant of any number of the offenses charged. Vidana, 206 Cal.Rptr.3d 556, 377 P.3d at 816; Cal. Pen. Code § 954. Because section 954 had been interpreted as broadly permitting multiple convictions, California courts typically applied section 654 to bar multiple punishments without separate analysis regarding whether multiple convictions may stand when an individual had been convicted on multiple counts for a single act or course of conduct. See id., 206 Cal.Rptr.3d 556, 377 P.3d at 808, 817 (citing People v. Gonzalez, 60 Cal.4th 533, 179 Cal.Rptr.3d 1, 335 P.3d 1083 (2014); People v. Ortega, 19 Cal.4th 686, 80 Cal.Rptr.2d 489, 968 P.2d 48 (1998); People v. Pearson, 42 Cal.3d 351, 228 Cal.Rptr. 509, 721 P.2d 595 (1986)).

. When a guilty plea is entered in lieu of trial, there are no correlative jury instructions, so a plea agreement or transcript of the plea colloquy may be referenced. United States v. Marcia-Acosta, 780 F.3d 1244, 1250 (9th Cir. 2015) (citing Shepard, 544 U.S. at 26, 125 S.Ct. 1254).

. At the plea hearing, the judge initially stated the charged count—erroneously—as "sales involving cocaine;” the prosecutor similarly stated the charge as “sale of a controlled substance, in this case cocaine.”